Peg J. ZIEGLER, Appellant,

v.

LEO A. HOFFMANN CENTER, INC., Respondent.

No. C8-86-1121.

Court of Appeals of Minnesota.

Dec. 9, 1986.
Review Denied Feb. 13, 1987.

Douglas A. Hedin, Minneapolis, for appellant.

John R. Rodenberg, Berens, Rodenberg, O'Connor, Olson, Hinnenthal & Tuttle, New Ulm, for respondent.

Heard, considered, and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Appellant Peg Ziegler was discharged during her probationary period of employment with respondent Leo A. Hoffmann Center (Hoffmann Center) for violation of internal regulations and procedures. Ziegler sued Hoffmann Center alleging tortious wrongful discharge and wrongful withholding of overtime pay. Hoffmann Center moved for summary judgment which the trial court granted. We affirm in part and enter judgment.

## FACTS

On March 24, 1984, appellant Ziegler was hired as youth counselor at the respondent Leo A. Hoffmann Center. Hoffmann Center is a nonprofit residential facility for teenaged sex offenders located on the grounds of St. Peter State Hospital. Ziegler's title was nighttime counselor, but because her working hours ran from 11:00 p.m. to 7:00 a.m., the position primarily involved housekeeping duties. At the time

she was hired, David Compton, the director of Hoffmann Center, told Ziegler (which she acknowledged) that she was a "probationary" employee and could be discharged at any time for any reason within the probationary period. Gary Vollmer, the program supervisor, gave her an employment manual at that time which covered a "probationary" employee.

Within two weeks, Ziegler began compiling suggestions for improvement at the Hoffmann Center. During April and May 1984, Ziegler met with both Compton and Vollmer to discuss her suggestions. Ziegler's most pressing concern was the staff's inadequate monitoring of the residents' prescription and nonprescription medicine.

Ziegler's other concerns included the Hoffmann Center's use and the availability to residents of aerosol sprays, lack of upkeep of wooden floors causing splinters to barefooted residents, failure to label, date, and cover leftovers stored in the refrigerator, storage of leftovers in ziplock food bags, the general lack of cleanliness in the bathrooms and kitchen, and use of swear words between residents and staff.

Ziegler requested that Compton and Vollmer immediately institute practices and procedures to rectify what she believed were clear violations of the rules of the Department of Public Welfare (DPW). Vollmer and Compton took steps to implement some of Ziegler's suggestions. For example, both Compton and Vollmer acted immediately to arrange a master log for monitoring the time and amount of medicine taken by each resident. Compton checked with the DPW regarding its rules concerning the storage of leftover food, but found the Center's method of food storage was within DPW rules.

Since Vollmer and Compton did not immediately act on all of her suggestions, in mid-April 1984, Ziegler contacted the DPW, licensing division, and enumerated her complaints about medication monitoring, kitchen cleanliness, and food storage. Peter Hoenecker and Cheryl Neihus, employees at DPW licensing, told her such complaints were not violations of DPW rules and it was unnecessary to file a written report. In April 1984, Ziegler also contacted the Minnesota Health Department with her complaints. Charles Snyder, of the Minnesota Health Department, also told her not to file a written report. At some time she also contacted Jan Moline, a director of the Hoffmann Center, and a Nicollet County commissioner.

Ziegler states she made several additional calls to several governmental agencies during April 1984, but cannot recall dates nor to whom the calls were made. She did not file written reports with any agency, nor did she orally report to the local welfare department or to local law enforcement agencies.

Also during the spring and summer of 1984, Ziegler worked several extra shifts and demanded overtime pay. Compton told her she was entitled to compensatory time off, but would not be paid overtime. On June 28, 1984, Ziegler called the Minnesota Fair Labor Practices Division. She complained that Hoffmann Center was not paying overtime to its workers. About this time Vollmer caught Ziegler falsifying time sheets. Ziegler corrected her time sheets at Vollmer's request and never actually received money in excess of that earned.

In late June 1984, Ziegler began allowing residents to remain up late several nights a week and on those occasions had been communicating to the residents her distrust of several staff members and counselors. As a consequence of late nights, the residents began sleeping during class and in the afternoons after class. Following Ziegler's communications to the residents about her dissatisfaction with other staff members, a verbal altercation occurred between a resident and his counselor which nearly came to physical blows. When the resident calmed down, he stated he distrusted his counselor because of Ziegler's statements.

Compton interviewed several residents who all stated that Ziegler let them stay up late and communicated her distrust of the staff and her concern with the Hoffmann Center's procedures generally. Compton

concluded that Ziegler inappropriately instigated tension between the staff and residents.

On July 25, 1984, about four months after she began her probationary employment, Compton discharged Ziegler. Compton stated the following reasons for Ziegler's dismissal in his discharge letter to her:

1. Involvement in issues raised by other staff that should have been directed to the Supervisor or myself rather than being answered by you.

2. Not following proper procedures with complaints.

3. Allowing residents to remain up past bedtime.

4. Completing time sheets prior to actually working.

5. Current information from residents involving sharing personal, unfavorable views of other staff and the Center's program with them.

Ziegler's dismissal occurred within 90 days after her oral complaints to the DPW and Department of Fair Labor Standards. After she was terminated, she made written reports to these agencies which she had previously contacted by telephone.

In January 1985, Ziegler brought suit against the Hoffmann Center alleging retaliatory discharge based on specific statutory provisions in the Maltreatment of Minors Act, Minn.Stat. § 626.556, subd. 4a, and tortious retaliatory discharge based on the public policy exception to at-will employment. Ziegler also alleged she was denied overtime pay and penalties.

Hoffmann Center moved for summary judgment which the trial court granted, and dismissed all of Ziegler's claims. The trial court found that Ziegler was not protected under the Maltreatment of Minors Act because she did not allege incidents of neglect or physical or sexual abuse of minors, nor report those allegations to local welfare or law enforcement agencies. Further, the trial court held that Minnesota does not recognize the public policy exception to at-will employment. Finally, the court dismissed Ziegler's claim for overtime pay without explanation.

## ISSUES

1. Did the trial court err in holding that appellant did not have a valid claim for retaliatory discharge under Minn.Stat. § 626.556, subd. 4a, when no written report was submitted and where none of her complaints during the term of her employment related to physical or sexual abuse or neglect of minor children?

2. Did the trial court err in holding that appellant did not have a valid claim for tortious retaliatory discharge founded on the public policy exception to at-will employment?

3. Did the trial court err in dismissing appellant's claim for overtime wages?

## ANALYSIS

1. Minn.Stat. § 626.556 provides for the reporting of maltreatment of minors, in order to protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse. Minn. Stat. § 626.556, subd. 1 (1984). The statute mandates that health care personnel report incidents of abuse or neglect:

> A professional or his delegate who is engaged in the practice of the healing arts, social services, hospital administration, psychological or psychiatric treatment, child care, education, or law enforcement who knows or has *reason to believe a child is being neglected or physically or sexually abused* shall immediately report the information to the local welfare agency, police department or the county sheriff.

*Id.,* subd. 3 (emphasis added).

The statute also precludes retaliatory discharge:

> An employer of any person required to make reports under subdivision 3 shall not retaliate against the person for reporting in good faith abuse or neglect pursuant to this section, or against a

child with respect to whom a report is made, because of the report.

\* \* \* \* \* \*

(c) There shall be a rebuttable presumption that any adverse action within 90 days of a report is retaliatory. For purposes of this paragraph, the term "adverse action" refers to \* \* \*

 (2) *discharge from or termination of employment.*

*Id.,* subd. 4a (emphasis added). Neither party disputes that Ziegler was statutorily required to report neglect or physical or sexual abuse, nor that the statute precludes retaliatory discharge of reporters.

The question is whether Ziegler had reason to believe that the Hoffmann Center neglected or physically or sexually abused minors in its care. Neglect is statutorily defined as follows:

(c) "Neglect" means failure by a person responsible for a child's care to supply a child with *necessary food, clothing, shelter or medical care* when reasonably able to do so or failure to protect a child from conditions or actions which *imminently and seriously endanger the child's physical or mental health* when reasonably able to do so. \* \* \*

*Id.,* subd. 2(c) (emphasis added). Ziegler made many suggestions and complaints during her four-month employment at Hoffmann Center. Ziegler never suggested, however, that any resident at the Center did not receive necessary food, clothing, shelter, or medical care. Her most serious allegation was that the staff imperfectly monitored the residents' medicine, but the only incident occurring because of this inadequate monitoring was that one resident once took four tylenols within a four-hour period. This hardly constitutes failure to receive adequate medical care.

Ziegler never alleged conditions existed which imminently and seriously endangered the residents' physical or mental health. Neither did Ziegler allege that any resident at the Hoffmann Center was physically or sexually abused. Consequently, the definitions preclude Ziegler from claim-ing protection from wrongful discharge under this statute.

Even if Ziegler alleged neglect or abuse, she is not protected by the statute because she never "reported" within the meaning of the statute. A "report" means "any report received by the local welfare agency, police department or county sheriff pursuant to this section." *Id.,* subd. 2(e). Ziegler never reported to the local welfare agency or the local law enforcement.

 Even if the statutory definition of "report" is construed broadly to include complaints made to the DPW, the statute requires a written report as soon as possible after the first oral reporting. *Id.,* subd. 7. Ziegler never made any written reports until after she was fired. Even then she did not file written reports with the local authorities as the statute requires. Consequently, Ziegler failed to allege a prima facie case of retaliatory discharge under Minn.Stat. § 626.556.

 2. In Minnesota, all employment of an indefinite term is presumed to be at-will; either party can terminate the employment for any reason or no reason at all. *Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). Ziegler argues that the tort of retaliatory discharge, founded on public policy considerations, is an exception to the general rule of at-will employment.

In this case, Ziegler failed to show facts supporting her allegation that her complaints to government authorities resulted in her discharge. On the contrary, the record supports the Hoffmann Center's reasons for discharge enumerated in Ziegler's termination letter. Absent any showing that the discharge was due to her complaints, Ziegler's charge of retaliatory discharge based on public policy considerations has no merit.

3. Ziegler alleges that the Hoffmann Center failed to pay her overtime for 24 hours, making a total claim of $242.28. The Hoffmann Center does not dispute that Ziegler worked 24 hours overtime for which she received neither pay nor time

off. The Hoffmann Center states no argument or defense to Ziegler's claim for overtime pay.

 Both parties state that the Department of Labor and Industry declined to take any action on Ziegler's complaint. However, the department's inaction does not indicate that no claim existed. An employee may sue an employer for overtime wages owed even if the Department of Labor takes no action on a claim. *See* Minn.Stat. § 177.33 (1984).

In addition to the statutory basis for a claim of wrongful withholding of overtime pay, the Hoffmann Center's employment manual states that an employee may opt for overtime pay or compensatory time off for overtime hours worked. The manual does not require an employee to accept compensatory time off.

The trial court in its otherwise thorough memorandum did not address this claim, so it remains unclear why the court dismissed it; but, in the absence of any defense to Ziegler's prima facie case, the court erred in dismissing this claim.

## DECISION

The trial court is affirmed in its dismissal of both retaliatory discharge claims. Judgment shall be entered for Ziegler in the sum of $242.28, plus statutory interest.

Affirmed in part and judgment entered.