Rita M. CANNON, Respondent,

v.

HABILITATIVE SERVICES, INC., Appellant.

No. C5–95–1326.

Court of Appeals of Minnesota.

March 19, 1996.

Daniel E. Warner, Warner Law Office, P.A. Eagan, for respondent.

Thomas Darling, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and PETERSON and HARTEN, JJ.

## OPINION

HUSPENI, Judge.

The trial court adopted the jury's findings that appellant Habilitative Services, Inc. (HSI), discharged its employee, respondent Rita Cannon, because she had made reports pursuant to Minn.Stat. § 626.557 (1992), the Vulnerable Adults (VA) Act, and that Cannon had suffered damages of $5,582.50 for loss of earnings and $75,000 for pain, suffering, and mental anguish. HSI moved unsuccessfully for judgment notwithstanding the verdict, a new trial, or remittitur, and appeals from the denial of that motion. We reverse.

## FACTS

HSI opened a residence for developmentally disabled adults in September 1992. Rita Cannon joined its staff as a part-time resident assistant on March 17, 1993. She received training, including training on the VA Act, Minn.Stat. § 626.557, and knew she was a mandated reporter under the VA Act.

Cannon reported to two supervisors with whom she did not get along. She called their supervisor twice in April 1993, first to complain that they were "bossy, clicky and unprofessional," then to complain about one supervisor's treatment of a resident. On this occasion, she was asked if she wanted to make a report pursuant to the VA Act; her response was to hang up. In early June 1993, two days before she was fired, Cannon again called the second level supervisor to complain about her supervisors and about one resident.

Cannon testified about the three incidents on which she bases her claim of having made VA reports. The first two were anonymous phone calls she allegedly made to McLeod County. Neither of the social workers to whom Cannon claims she spoke recalls or has a record of receiving her phone call; the county has no record of any VA reports being filed during the period of Cannon's employment with HSI.

Cannon testified that during the first phone call, she simply asked if the residence had been "checked out" and said she was "concerned" about the well-being of the clients; she did not report any abuse. She testified that she refused to give her name when she was asked for it; she did not indicate that she identified herself as a staff member or in any other way.

During the second anonymous call, Cannon allegedly expressed concern about one resident controlling the house and abusing other residents and staff. Although Cannon testified on direct examination that she intended this second phone call to be a complaint of abuse and neglect, she later testified on cross-examination that she did not consider either of the phone calls to be "VA abuse complaints within the meaning of the statute * * *." Cannon also testified that after her anonymous calls, one of her supervisors said "somebody has been telling on us * * *" and that Cannon "did not know if [the supervisor] would find out I did it or not."

The third incident occurred at the end of an HSI staff meeting on May 19, 1993. Cannon claims the county social worker to whom she allegedly spoke during her second phone call was present; that social worker, however, testified that she did not recall having been present. Cannon testified that she mentioned the problems with one resident controlling the house and suggested changing the system used to deliver medication; the social worker testified that she did not recall any such comments.

After HSI discharged her, Cannon brought this action, using these three incidents as the basis for her retaliatory discharge claim.[1] The case was tried to a jury. HSI proposed a special verdict form asking, first, whether Cannon had made a written report of suspected abuse or neglect, and then, whether Cannon had been discharged because she made reports. The trial court eliminated the first question; the jurors were not asked if Cannon made reports, but only whether she had been discharged because she made reports.

1. Cannon also claimed defamation. The jury found that HSI had not defamed her; this finding is not challenged on appeal.

HSI also proposed jury instructions that a discharged employee fails to state a claim for retaliatory discharge under the VA Act when no written report is submitted and that, to recover damages under the VA Act, a discharged employee must demonstrate that she filed a written report outlining the alleged abuse or neglect with the governmental authorities.[2] The trial court rejected both of these instructions, and instructed the jury:

> If you find that Rita Cannon's discharge from employment with Habilitative Services, Inc., occurred within 90 days of the date she made [a] report of suspected abuse or neglect, then you must presume that her discharge is retaliatory.

Thus, both the special verdict form and the jury instructions presupposed that Cannon had made a report.

## ISSUE

Did respondent make a report of abuse or neglect pursuant to Minn.Stat. § 626.557?

## ANALYSIS

### Standard of Review

■ The construction of a statute is clearly a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 626.557 (1992) provides:

Subd. 2(f) "Report" means any report received by a local welfare agency, police department, county sheriff, or licensing agency pursuant to this section.
* * * *

Subd. 3. **Persons mandated to report.** * * * [A]n employee of or person providing services in a facility who has knowledge of the abuse or neglect of a vulnerable adult * * * shall immediately report the information to the local police department, county sheriff, local welfare agency, or appropriate licensing or certifying agency.
* * * *

Subd. 4. **Report.** A person required to report under subdivision 3 shall make an oral report immediately by telephone or otherwise. A person required to report under subdivision 3 shall also make a report as soon as possible in writing to the appropriate police department, the county sheriff, local welfare agency, or appropriate licensing agency. The written report shall be of sufficient content to identify the vulnerable adult, the caretaker, the nature and extent of the suspected abuse or neglect, any evidence of previous abuse or neglect, name and address of the reporter, and any other information that the reporter believes might be helpful in investigating the suspected abuse or neglect.
* * * *

Subd. 17. **Retaliation prohibited.** (a) A facility or person shall not retaliate against any person who reports in good faith suspected abuse or neglect pursuant to this section * * *.
* * * *

(c) There shall be a rebuttable presumption that any adverse action, as defined below, within 90 days of a report, is retaliatory.
* * * *

(1) Discharge or transfer from the facility. Cannon's complaint alleged that pursuant to the statute she was a mandated reporter, that she had made a "complaint of suspected abuse and neglect to the county," that she had been discharged in retaliation for this complaint, and that her discharge violated the statute.

On appeal, HSI reiterates the argument made in its motion for summary judgment, its motions to dismiss, and its posttrial motions: Cannon's termination was not retaliatory because nothing she said or did amounted to a VA report pursuant to the statute.

■ It is undisputed that: (1) Cannon did not make any written reports; (2) neither of the county social workers to whom Cannon allegedly made telephone reports recalled or had notes of those reports, although both were in the habit of keeping notes of VA

---

**2.** HSI cited *Ziegler v. Leo A. Hoffmann Ctr.*, 397 N.W.2d 378, 382 (Minn.App.1986), *review denied* (Minn. Feb. 13, 1987), as the authority for both these instructions.

reports; (3) the county files indicate that no VA reports were made during the period Cannon worked for HSI; (4) Cannon identified neither the victim nor the abuser in her alleged reports; (5) the county social worker who allegedly attended the meeting where Cannon commented on medication practices did not remember having attended it; and (6) Cannon's comments at the meeting were not identified by her or considered by others as reports of abuse and neglect.

There is no case construing the prerequisites for a retaliatory discharge claim under Minn.Stat. § 626.557. Therefore, HSI relies on *Ziegler v. Leo A. Hoffmann Ctr.*, 397 N.W.2d 378, 382 (Minn.App.1986), *review denied* (Minn. Feb. 13, 1987). *Ziegler* concerns the prerequisites for retaliatory discharge under Minn.Stat. § 626.556 (1984), which mandates reporting maltreatment of minors in language almost identical to that in which Minn.Stat. § 626.557 mandates reporting maltreatment of vulnerable adults. *Ziegler* upheld the dismissal of a retaliatory discharge complaint, noting that the alleged reports were not of "neglect" or "abuse" as those terms are defined in the statute.

> Her most serious allegation was that the staff imperfectly monitored the residents' medicine * * *. * * * Consequently, the definitions [of abuse and neglect] preclude [appellant] from claiming protection from wrongful discharge under this statute.

*Id.* at 382.

> The VA Act defines neglect as
>
> (1) failure by a caretaker to supply a vulnerable adult with necessary food, clothing, shelter, health care or supervision;
>
> (2) the absence or likelihood of absence of necessary food, clothing, shelter, health care, or supervision for a vulnerable adult; or
>
> (3) the absence or likelihood of absence of necessary financial management * * *.

Minn.Stat. § 626.557, subd. 2(e) (1992). Abuse is defined as any act that constitutes a violation under other statutory provisions or:

> (2) nontherapeutic conduct which produces or could reasonably be expected to produce pain or injury and is not accidental, or any repeated conduct which produces or could reasonably be expected to produce mental or emotional distress;
>
> (3) any sexual contact between a facility staff person and a resident or client of that facility;
>
> (4) the illegal use of a vulnerable adult's person or property for another person's profit or advantage * * *; or
>
> (5) any aversive and deprivation procedures that have not been authorized under section 245.825.

Minn.Stat. § 626.557, subd. 2(d) (1992). Even taking Cannon's accounts of her alleged reports as true, there is no evidence that she alleged "abuse" or "neglect" as defined by the VA Act. She testified that in one call she said she was "concerned with the well-being of the clients" and that in the other she "went over again the behaviors we were having with [a resident whom Cannon regarded as troublesome] and the medication errors." These statements do not meet the statutory definitions of abuse or neglect: Cannon, like the discharged employee in *Ziegler*, is precluded by those definitions "from claiming protection from wrongful discharge under this statute." *Id.* at 382.

■ *Ziegler* also relied on the statutory definition of "report" in determining that the discharge could not have been in retaliation for a report because no report had been made.

> Even if [the discharged employee] alleged neglect or abuse, she is not protected by the statute because she never "reported" within the meaning of the statute. A "report" means "any report received by the local welfare agency, police department or county sheriff pursuant to this section." [Minn.Stat. § 626.556], subd. 2(e).[3] [Appellant] never reported to the local welfare agency or the local law enforcement.

*Id.* Clearly, under *Ziegler*, where no report is received by any of the agencies specified in the statute, there is no case for retaliatory discharge. Here, there is no evidence that any county employee ever received a report made by Cannon; there is no evidence other

---

**3.** This language is identical to Minn.Stat. § 626.557, subd. 2(f).

than Cannon's own assertions that the reports were made. Again, comparison with *Ziegler* indicates that the statutory criteria for a retaliatory discharge were not met. We find *Ziegler* persuasive both in its holding that the allegations made in a report must be of abuse or neglect as those terms are defined in the statute and in its holding that an alleged report must meet the statutory definition.

While we agree with HSI that *Ziegler* is applicable in this case, we disagree with HSI's assertion that *Ziegler* requires a written report in order to maintain a retaliatory discharge action. Instead, we share the trial court's view that the crux of the *Ziegler* decision was not the failure of the employee to file written reports but rather the failure of the alleged reports to convey substantive charges of abuse or neglect.[4] The trial court specifically rejected HSI's contention that the lack of a written report was fatal to Cannon's case:

> Under [HSI's] reading, written reports are the key, and no discharge is actionable under the Vulnerable Adult's Act without a written report, regardless of how blatantly retaliatory the discharge is. The Court finds such a reading inimical to the public policy embodied in the statute. * * * [T]he purpose of the Vulnerable Adults Act is to promote reporting and investigations of abuse. Refusing to act on [oral reports], or protect workers who make only oral reports[,] would not be in keeping with the spirit of the law. * * * [T]o the extent *Ziegler* requires written reports to make a claim of retaliatory discharge, that requirement is not in keeping with the purpose of the Vulnerable Adults Act. Therefore, the Court declines to apply HSI's interpretation of *Ziegler*.

We do not disagree with the trial court's analysis of the public policy embodied in the VA Act. We believe the public policy embodied in the Child Protection Act construed in *Ziegler* to be identical. Both statutes state the intent to protect a particular group and to require reporting of neglect or abuse of that group. While the Acts encourage reporting by protecting reporters from retaliation, it is clear that the primary purpose of the Acts is the protection not of reporters but of children and vulnerable adults.

It is unfortunate that HSI's insistence that a "report" must be in writing, and the trial court's understandable reluctance to accept such a requirement, led all participants to focus throughout the trial on an issue of secondary importance and to fail to address the primary issue. While we conclude that neither the statute nor *Ziegler* requires a written report as a prerequisite to a retaliatory discharge claim, both do require that a report, in fact, be made. One was not made here; therefore, Cannon's cause of action must fail.

While courts are generally hesitant to overturn a jury verdict, we are compelled to do so here because the jury was not permitted to answer a necessary, preliminary question: "Did Cannon make a report under the VA act?" Omitting a question from a special verdict form can sometimes lead to reversal and remand for a new trial, but it does not do so here. Cannon's actions, as a matter of law, do not constitute a "report" under even the broadest construction of the VA Act or the most liberal interpretation of *Ziegler*.

Because our decision on dismissal of the claim moots the other issues raised by HSI on appeal, we do not address them.

### DECISION

There is no evidence indicating that any of Cannon's acts was a report within the meaning of the Vulnerable Adults Act. Her retaliatory discharge claim is therefore unfounded.

**Reversed.**

HARTEN, Judge (concurring specially).

Because the court holds that there was no report, that part of the court's opinion that concerns whether a report must be in writing is unnecessary and constitutes dicta. Accordingly, I concur in the result.

---

4. In this connection, we note that Minn.Stat. § 626.557, subd. 4, has been amended to eliminate the requirement of a written report. *See* Minn.Stat. § 626.557, subd. 4 (Supp.1995).