781 A.2d 1105

S.D., PETITIONER–APPELLANT, v. DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY DEVELOPMENT, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 12, 2001—Decided October 10, 2001.

326

Before Judges KING, CUFF and WINKELSTEIN.

Passaic County Legal Aid Society, attorneys for appellant (*Stanley G. Sheats*, on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent (*Michael J. Haas*, Assistant Attorney General, of counsel; *Dennis J. Conklin*, Senior Deputy Attorney General, on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

S.D. appeals from a final order of the Department of Human Services (DHS), Division of Family Development (DFD), affirming the decision of the Administrative Law Judge (ALJ) denying her application for Work First New Jersey/Temporary Assistance for Needy Families (WFNJ/TANF) benefits. This denial of benefits was based upon her failure to cooperate in good faith with the Child Support Program (CSP) by failing to identify and locate the father of her son, J.D., for purposes of enforcing his child support obligations. We conclude the decision that appellant did not cooperate in good faith was unsupported by the substantial credible evidence in the record and we reverse.

## I

WFNJ/TANF is a program to provide assistance for needy families administered at the local level by the State's twenty-one County Welfare Agencies pursuant to DHS/DFD regulations and directives. See *N.J.S.A.* 44:10–55 to –78. WFNJ/TANF replaced the Aid to Families with Dependent Children (AFDC) Program. *N.J.A.C.* 10:90. The predecessor AFDC Program established requirements for State AFDC plans and provided as a condition for eligibility for aid, that each applicant was required to cooperate with the State in establishing the paternity of a child born out of wedlock for whom aid was claimed. *See* 42 *U.S.C.A.* § 602(a)(26). When AFDC was replaced by WFNJ/TANF on July 1, 1997, the cooperation requirement was carried forward. 42 *U.S.C.A.* § 654(29). The State is required to determine whether an individual who has applied for or is receiving assistance under the State's program is cooperating in good faith with the State to establish the paternity of any child of the individual. 42 *U.S.C.A.* § 654(29)(A). Should the custodial parent fail to cooperate by failing to furnish the State agency with certain information to help identify and locate the father of the child, the State may sanction the custodial parent by either reducing the benefits by at least twenty-five percent or denying all assistance. 42 *U.S.C.A.* 608(a)(2).

Conditions for eligibility for WFNJ/TANF include:

[a] recipient, as a condition of eligibility for benefits, shall, subject to good cause exceptions as defined by the commissioner, be required to: do all acts stated herein necessary to establish the paternity of a child born out-of-wedlock, and to establish and participate in the enforcement of child support obligations ...

[*N.J.S.A.* 44:10–45(b).]

Regulations further define the good faith cooperation requirement. *N.J.A.C.* 10:90–16.3; *N.J.A.C.* 10:90–16.4; 29 *N.J.R.* 3287, 3347 (July 21, 1997).

(a) To cooperate, a WFNJ/TANF applicant/recipient shall make a good faith effort to provide information as outlined in (b) and (c) below. The child support worker shall explain the child support cooperation requirements, the good faith standard set out in (b) and (c) below, and what constitutes a good cause claim as outlined at N.J.A.C. 10:90–16.5. *An applicant or recipient shall be deemed to be making a*

*good faith effort if he or she has provided all the information he or she has or can reasonably obtain as required by (b) or (c) below.* Initial cooperation shall begin with the applicant/recipient signing the affidavit of cooperation.

. . .

(b) A WFNJ/TANF applicant/recipient shall provide sufficient information related to the non-custodial parent for each child for whom the applicant/recipient seeks assistance.

1.  Information is considered sufficient if it meets the requirements of (b)1i or ii below:

i.  The non-custodial parent's full name and three of the following:

(1) Date of birth;

(2) Social Security number;

(3) Address (current or last known);

(4) Employer (current or last known) or other sources of income;

(5) Manufacturer, model and license plate number of automobile; or

(6) Motor vehicle driver's license number.

. . .

(c) *If it is determined that the information provided to date is insufficient, and the applicant/recipient states that he or she is unable to obtain the information without assistance, the child support worker shall identify the additional information needed and assist the individual in securing that information.* A WFNJ/TANF applicant/recipient who has not provided sufficient information as specified in (b)1i above or reasonably equivalent information as specified in (b)1ii above, shall be deemed to be cooperating in good faith if he or she provides all of the following information he or she can reasonably obtain: the non-custodial parent's name and any of the information in (b)1i or (b)1ii above or any of the following information, such as, but not limited to:

1.  A statement(s) as to the name or location of the non-custodial parent from individuals other than the WFNJ/TANF applicant/recipient . . .

2.  Records, or information as to the whereabouts of records, from law enforcement, social service or other agencies, courts or offices substantiating the name and possible location of the non-custodial parent. The applicant may request the CWA/CSP unit's assistance in obtaining the required documentation in accordance with N.J.A.C. 10:90–16.3(g)5;

3.  Utility bills, parking tickets, credit card receipts or other personal records or effects that contain information regarding the name or location of the non-custodial parent;

4.  Telephone numbers or addresses of individuals who, if contacted, may be able to provide information as to the name or location of the non-custodial parent;

. . .

6.  After the IV–D interview *when the WFNJ applicant/recipient has provided all the information in good faith he or she can reasonably obtain and all avenues to obtain information have been exhausted, then the applicant/recipient shall be*

allowed to complete an affidavit with the child support worker which establishes that the individual provided all the information he or she can reasonably obtain in accordance with (b) and (c) above. The affidavit shall detail the steps taken and any obstacles encountered by the applicant/recipient in trying to provide sufficient information related to the non-custodial parent. *The applicant/recipient shall then have met the cooperation requirement unless additional or contrary information becomes known to the CWA/CSP unit.*

[*N.J.A.C.* 10:90–16.4 (emphasis added).]

When pared to its essentials, *N.J.A.C.* 10:90–16.4 provides two ways for the applicant to meet the good faith requirement. The applicant may furnish information about the absent parent in three of the five categories listed in subparagraph (b) or, if the applicant cannot supply the required information, she may still be deemed cooperating in good faith if she provides all of the information that she can reasonably obtain listed in subparagraph (c). Within this statutory and regulatory structure, S.D. sought WFNJ/TANF benefits for her son, J.D., and herself.

II

In 1998, appellant was living in Hartford, Connecticut where she received Supplemental Security Income (SSI) but was unemployed and had no other income. In the Fall of 1997, her friend Carlos introduced her to a man known as "Freddy." Freddy declined to tell her his last name, but she was aware that Freddy lived in Hartford with his mother. While dating Freddy during a two-week period she became pregnant but was not aware of her pregnancy during the period of their relationship. After she stopped dating Freddy, appellant did not see him again because he no longer frequented the club where they met. She did not know where he lived. J.D. was born in February 1998.

In September 1998 appellant moved to Patterson, New Jersey, and applied for assistance from the Passaic County Board of Social Services. Her application was denied. She reapplied on October 29, 1999 but the agency again denied the application on the ground that she failed to provide the agency with sufficient information concerning J.D.'s father. In an effort to have the

decision reconsidered, appellant then prepared and submitted an affidavit of cooperation. *N.J.A.C.* 10:90–16.4(a). It stated, in part,

\* \* \* \*

2. [I] have provided it (the agency) with all the information that I have or can obtain.

3. The father of [J.] I know only as Freddy. I met Freddy in the fall of 1998 in Hartford, Connecticut. I was living in Hartford, Connecticut at the time. My friend Carlos introduced me to Freddy. Freddy would not even tell me his last name. Freddy told me that he was residing with his mother in Hartford, however, he never told me where his mother lived. He would take me out and bring me back home. He would call me the next day. However, he would never take me to his mother's house. He never allowed me to meet his friends. He would not give me any information concerning himself.

4. He introduced me to his mother once. However, it was not at his mother's house. His mother looked at me like she did not like me. After we dated for about two weeks, Freddy stopped seeing me. He would stay away from the club that I met him in. He would not go to any of the places that I frequented. One of my friends said that she overheard Freddy's mother say that she did not want Freddy to see me because I didn't have any money. However, that friend did not know where Freddy's mother lived.

5. In July 1998 I went to Puerto Rico. It was then that I found out that I was pregnant. I came back to Hartford [but] . did not look for Freddy because I was upset with him because I had seen him at a club with another woman. However, after I saw him with the woman, he stopped going to that club. At that time my only source of income was SSI....

6. On September 5, 1998, I came to Paterson. I ... cannot find Freddy because I don't know anybody in Hartford that knows Freddy. I met his mother once. However, I do not know where she lives. Freddy stopped going to the places that I met him at. He stopped frequenting the club in which I saw him with the woman. I do not know where to look for him. There is nothing that I can do to find Freddy. Even if there was, I do not have the means to search for him in Hartford ..

\* \* \* \*

The record is unclear what action, if any, was taken by the agency after submission of the affidavit. The application apparently was not reconsidered; rather S.D. requested an Administrative Fair Hearing. DHS transmitted the matter to the Office of Administrative Law for a hearing as a contested case. *N.J.S.A.* 52:14B–1 to –15; *N.J.S.A.* 52:14F–1 to –13.

At the hearing before the ALJ, respondent argued that appellant failed to cooperate by failing to give the names of her friends

in Connecticut who knew Freddy, and by failing to provide any information to the agency concerning where Freddy's mother lived. During the course of the hearing, appellant testified that she attempted to contact her friend, Carlos, but his number was not in service. She said that Freddy's mother previously lived on Washington Street in Hartford and she believed his mother no longer lived there, although she never checked. She was asked at the hearing if she knew any of Freddy's friends, and she replied she did. However, she was not asked to provide their names or where they lived. Based on her testimony, the ALJ concluded that appellant failed to cooperate in good faith and denied her application for benefits. The Director affirmed.

## III

On January 20, 1998, DHS amended its regulatory scheme. 30 *N.J.R.* 389 (January 20, 1998). As can be gleaned from the comments to the amendments, the changes were made to clarify that if an applicant is unable to provide the specific information listed in the regulations concerning the non-custodial father, the good faith cooperation requirement will be met as long as there was disclosure of all of the information the applicant had or could reasonably obtain.

> N.J.A.C. 10:90–16.4(c), which is intended to address situations where the applicant is cooperating in good faith by providing all possible information, must provide an exception for applicants who cannot name the noncustodial parent because they do not know and cannot obtain his name or his full name. This may be so for any of a number of reasons including but not limited to those in which: ... (2) the father lied about his identity and (3) the child was conceived as the result of a casual encounter, in which the applicant did not get the full name, or after a significant amount of time has elapsed. These factors are properly addressed through the good faith exception, because the information is not available to the applicant/recipient.
>
> At the conclusion of the list of information to be provided under this section, there should be an additional provision allowing applicants/recipients to file affidavits documenting their inability to provide the requested information.
>
> [30 *N.J.R.* at 406.]

A fair reading of the comments reveals the administrative agency's intent that applicants should not be denied benefits for failing

to provide information which they do not have and cannot reasonably obtain.

In this case Freddy refused to provide appellant with his last name. J.D. was conceived as a result of a brief, casual encounter. By the time appellant realized she was pregnant, she was no longer seeing Freddy and did not know where he lived. He no longer frequented the club where they met. Upon moving to New Jersey, appellant clearly did not have the economic means to search for and locate Freddy. We conclude it would be unreasonable to require her to do so.

Once the applicant sets forth in the affidavit the steps taken and obstacles encountered to try to provide sufficient information related to the non-custodial parent, the applicant has met the cooperation requirement, unless additional or contrary information is or becomes known to the agency. *N.J.A.C.* 10:90–16.4(c)(6). If additional information is needed, the agency is required to assist the individual in securing it. *N.J.A.C.* 10:90–16.4(c). These regulations, when read in light of the agency's comments when the regulations were adopted, establish the proposition that when an applicant attests in good faith by affidavit that she has no additional information, she shall have met the cooperation requirement unless additional or contrary information becomes known to the agency. Once the affidavit is furnished, the burden shifts to the agency to show that the attestation was false, or that the applicant failed to take reasonable steps to locate the father of the child.

There is no authority in this jurisdiction directly addressing this issue; the Ninth Circuit addressed a similar situation in *Tomas v. Rubin*, 926 *F*.2d 906 (9th Cir.1991). In *Tomas*, the appellant had a casual sexual encounter, later gave birth to a child, and applied for AFDC benefits. The only information she was able to supply was the child's father's nickname, "Boy." She executed an attestation explaining her lack of information but the agency determined she was ineligible based on a failure to cooperate. The District Court granted summary judgment in favor of the agency but the Court of Appeals reversed. Although there were some

inconsistencies in the appellant's statements concerning her lack of knowledge of the name and whereabouts of the father of the child, the Circuit Court concluded that even with such inconsistencies, the attestation of lack of information may be overcome only where the agency has substantial evidence that the attestation was false. *Id.* at 910.

> To give meaning to the inclusion of the attestation and the definition of cooperation, an attestation of lack of information should create a presumption of cooperation that may be overcome by showing that the attestation was false, or that the applicant failed to cooperate in one of the other respects required by 45 C.F.R. § 232.12(b) . . .
>
> *[Ibid.]*

Other cases, although not factually identical, are in general accord. *Doston v. Duffy,* 732 *F.Supp.* 857, 871 (N.D.Ill.1988) (holding that attestation of lack of knowledge about father may only be rejected on the basis of independent evidence that the recipient has withheld information or given false attestation); *S.N.S. v. North Dakota Dep't. of Human Servs.,* 474 *N.W.*2d 717, 720 (N.D.1991) (finding that when an applicant attests that she has no additional information concerning paternity, a presumption of cooperation is created, and the burden then shifts to the agency to establish by substantial evidence that the attestation is false); *Erickson v. Commissioner of DHS,* 494 *N.W.*2d 58, 63 (Minn.Ct. App.1992) (providing that when there is an attestation of no further information, together with the fact that the applicant has not named anyone else as a possible father, that is sufficient to demonstrate she is cooperating adequately in establishing paternity); *B.K. v. Department of Health and Rehab. Servs.,* 537 *So.*2d 633, 635–36 (Fla.Dist.Ct.App.1988) *review denied,* 544 *So.*2d 199 (Fla.1989) (stating that even where Human Leucocyte Antigen (HLA) tests exclude the man named by the recipient as the father, cooperation is established by the recipient signing an affidavit attesting to the lack of further information about the father).

In *R.K. v. Department of Human Servs.,* 215 *N.J.Super.* 342, 521 *A.*2d 1319 (App.Div.1987), we addressed generally the issue of

cooperation by an AFDC applicant whose monthly grant was reduced by the Burlington County Board of Social Services which concluded that she was withholding the identity of one of her children's fathers. The Director of the New Jersey Division of Public Welfare adopted the initial decision of the ALJ and affirmed the Board's action. In that case, at the behest of the Board, R.K. commenced a paternity action against F.R., who she said was T.'s father. That action was dismissed when an HLA blood test excluded F.R. as T.'s father. We found that if R.K. had been concealing the identity of T.'s father, she would be violating the cooperation requirement of *N.J.A.C.* 10:81–11.2(a)(3), which requires an AFDC applicant to provide evidence relevant to obtaining child support and which includes information necessary to identify the child's father.

In the present case, the facts do not support a conclusion that S.D. has been concealing the identity of her child's father or has not otherwise fully cooperated by providing all of the information she has about how he may be located. Despite the minor inconsistencies between her affidavit and her testimony at the hearing, there is no substantial evidence upon which to base a conclusion that she is either hiding the identity of the child's father or deliberately presenting inaccurate information. Her relationship with the father lasted two weeks when she lived in Connecticut. Under the facts of this case a conclusion that she is trying to conceal the identity of the father of the child is no more than mere supposition. She would have no reason to do so. Her efforts to locate the father may not have been exhaustive, but they were reasonable, given her circumstances. Once appellant provided the information in her affidavit that she could reasonably obtain she was deemed to have cooperated in good faith.

The intent of the statutory and regulatory framework requires a flexible application. Once the applicant provides the affidavit of cooperation which contains all of the information she can reasonably obtain, the burden shifts to the agency, not only to assist the applicant to obtain additional information, but to show that the information is false or that the applicant otherwise failed

to cooperate. To conclude otherwise, would render meaningless the provision of *N.J.A.C.* 10:90–16.4(c)(6), which provides that once the applicant has submitted all the information in good faith she can reasonably obtain, she shall have met the good faith cooperation requirement.

We are cognizant that we may reverse an agency's decision only if we find the agency acted arbitrarily, capriciously or unreasonably, or if the decision is not supported by the substantial credible evidence in the record. *L.M. v. State, Div. of Med. Assistance and Health Servs.*, 140 *N.J.* 480, 489, 659 *A.*2d 450 (1995); *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). Nor may we substitute our judgment for that of the agency, even if we would have reached a different result. *Brady v. Board of Review*, 152 *N.J.* 197, 210, 704 *A.*2d 547 (1997). Even though substantial deference is owed to the agency's fact finding, our review of its decision "is not simply a *pro forma* exercise in which we rubber stamp findings that are not reasonably supported by the evidence; 'it calls for careful and principled consideration of the agency record.'" *Chou v. Rutgers*, 283 *N.J.Super.* 524, 539, 662 *A.*2d 986 (App.Div.1995), *certif. denied*, 145 *N.J.* 374, 678 *A.*2d 714 (1996) (citations omitted).

We find here that the Director's decision was unreasonable; the agency did not apply the appropriate legal standard once the affidavit of cooperation was submitted. The agency's decision that appellant was not cooperating in good faith was unsupported by the substantial credible evidence in the record. The decision of the Director is reversed and remanded for the grant of benefits.

Reversed.